Gaston,
 
 Judge.
 

 This was an action of ejectment, and upon the trial the plaintiff endeavored to shew a title in his lessor by a deed from
 
 I-lenry O’Daniel
 
 to his children, and the defendant sot up a title under a sale and conveyance from the sheriff upon executions issued against
 
 Henry 'O’Daniel
 
 subsequent to the delivery of this deed. The controversy turned mainly upon the question whether
 
 O’Daniel’s
 
 deed was fraudulent and void as against the creditors in these executions. The jury found a verdict for the defendant, and judgment having been rendered accordingly, the plaintiff appealed to this court.
 

 We have not the right to decide, nor the means of knowing whether the verdict of the jury was correct or incorrect. The facts testified are brought before us so far only as to enable us to see the application of the charge of the Judge, and to ascertain whether’ in the instructions given, or in the instructions refused, any error has been committed which might have led the jury toan improper conclusion. The appellant excepts to a part of the charge as erroneous in law, and also complains that the Judge refused to give certain instructions which were prayed for by him, and which in law' ought to have been given.
 

 The part of the charge excepted to is in these wordsr “ that the question had been raised in the argument how “far a person indebted, was permitted to dispose of his “property by a voluntary conveyance — that it was a “ general principle that a man should be just before he “ was generous. If he was indebted and voluntarily “conveyed such a portion of his estate as left an insuf- “ ficiency for the payment of his debts, that such convey- “ was inoperative as to the debts which he then owed. “ If he was indebted and disposed of a part of his property by voluntary conveyances, leaving enough to
 
 *201
 
 “satisfy the claims of his creditors, hut by some casn-
 
 “
 
 alty or accident the property reserved should bo destroyed, when there had not been any delay in the creditors endeavoring to obtain their debts, and no improper indulgence given by them, that a voluntary “conveyance under such circumstances would be inval-
 
 ‘‘
 
 id to defeat such debts.” In a subsequent part of the charge after declining to give the instructions asked for by the plaintiff, the Judge laid down the above rule in a form more favorable to the voluntary donee. I do not however deem it necessary to examine the effect of fliis subsequent modification, because upon deliberate reflection, I am satisfied that the plaintiff lias no cause of complaint against the part of the charge excepted to, and that no rule more favorable to voluntary conveyances than the rule there stated can be tolerated, without violence to morality, public policy anti long established law.
 

 That the obligations of justice arc superior to the daims of affection, and that no man can rightfully bestow a favor at the expense of his creditor, is not questioned in the ingenious and able argument which has been urged on the part of the appellant. But it is asked may not these obligations and claims be reconciled — may not justice and generosity be both consulted — and is not this harmonious discharge of both classes of duty provided for, when the donor takes care, while giving away a part of his property, to reserve what will probably be sufficient to answer the demands of his creditors ? To the morality of such an arrangement, it seems to me there are obvious and unanswerable objections. It does not provide for the discharge of duties of different grades in their relative order. It does not even place the demands of right on a footing with the claims for bounty, but inverts the order for moral preference. It secures the latter — confessedly of inferior and imperfect obligation— beyond the correction of mistake and the reach of casualty, while it exposes the former — those of superior and. perfect obligation — to all the dangers arising from error of judgment and the contingencies of time an$ xnisphance.
 
 *202
 
 jf} contrary to probability, enough has not in fact been reserved for the creditor, and either he must lose the debt Qr .¡.¡1C ¿onco pc disappointed of the gift, can it be a question of morals on whom the loss should fall ? In the estimate of conscience no man owns more than what remains after the satisfaction of the just dues to others, and every donation which he makes is of the property of his creditor if by such g’ift they arc defeated. The duty of the debtor is to
 
 pay
 
 his creditor if ho have the ability to do so. The donee ought not to hold, and honestly cannot hold tiie property given, if it be needed for the payment of a creditor of the donor prior to the gift. Public policy is in this respect, as it always ought to be, consistent with the injunctions of morality and will not admit of the adoption of a rule less strict or precise.
 
 That
 
 credit which is indispensable for the commerce of life, can Scarcely be commanded in any country, where a debtor has the power to jeopard an existing debt by the gratuitous alienation of his effects. It would be strange if the common law, which has been termed the perfection of reason, had not recognized these dictates of justice and maxims of policy. In the progress of society, when with the refinements of life the artifices of deceit had greatly multiplied, it might well have been deemed expedient by the Legislative authority to interfere with positive enactments, the more explicitly to denounce, and the more effectually to embarrass and defeat contrivances at unfair alienation, which threatened injury to creditors and purchasers. The well known statutes of the 13th
 
 Elizabeth,
 
 almost expressly re-enacted by our act of 1715, and of the 27th of
 
 Elizabeth,
 
 were enacted for this end. But Lord
 
 Coke
 
 calls on the student to notice with respect to
 
 the first
 
 of these statutes, that it uses the words “declared,ordained and enacted,” and remarks “by force “ of which word
 
 declared
 
 it appeareth what the law was “before the making of the statute.”
 
 Co. Lit.
 
 76
 
 a.
 
 290 b. Lord
 
 Mansfield
 
 observes in the case of
 
 Codogan
 
 v.
 
 Kennett, Cowper 434,
 
 “that the principles and rules of the “ common law as now universally known and under- “ stood, are so strong against fraud in every shape that
 
 *203
 
 ;s the common laiv was calculated to attain every end “proposed by these statutes.” Whether the observation of this great judge be’ correct or notin its full extent, particularly in reference to the statute of 27th
 
 Elizabeth,
 
 there can be little doubt, and so it lias been declared by this court in the case of
 
 Morgan
 
 v.
 
 McClelland,
 
 (3
 
 Dev.
 
 83.) to be perfectly correct with respect to alienations attempted against existing rights. Certainly ever since the statute of the 7 3th
 
 Elizabeth
 
 either upon common law principles or by construction of that statute, a voluntary disposition of property has always been held void against a prior creditor thereby attempted to be defeated.
 

 Distinction as to equitable relief between cases of
 
 actual
 
 fraud, and fraud presumed only from the conveyance being voluntary: in the former equity relieves ; in the latter the creditor is-left to his leg4 re»edy.
 

 But it has been here insisted, and the Judge below was required by the plaintiff soto instruct the jury, that this doctrine was subject to a very important modification
 
 overlooked and
 
 disregarded indeed in many decisions and elementary treatises, but unequivocally declared in certain late adjudications of English Chancellors. It is said that these adjudications clearly recognize the principle, that a gift to a child or any other disposition founded on a consideration of blood or affection may be permitted to disappoint a prior creditor, if at the lime of the gift the donor or settler was not insolvent or largely indebted. In my judgment no such principle is asserted or implied in any of these adjudications. Before we enter upon the examination of these cases, it may not be amiss, to state that although a Court of Equity generally claims and exercises jurisdiction in matters of fraud, it is not every case of a conveyance which is fraudulent as against creditors or purchasers, which is a fit subject for the relief of that court. According to the distinction taken
 
 by
 
 Lord
 
 Ilardwicke,
 
 in
 
 Burnett
 
 v.
 
 Musgrove,
 
 (2
 
 Vesey
 
 57,) where a voluntary conveyance is made without
 
 actual
 
 fraud, a Court of Equity will say to him who complains of it, take your remedy at law ; but whenever the conveyance is attended with actual fraud, though the possession may be recovered by ejectment, a Court of Equity will entertain a bill to set aside a conveyance— which is, as he expresses it, “ a distinction between ac- “ tual fraud and fraud presumed- only from the convey
 
 *204
 
 ance being voluntary.” The case of
 
 Nash
 
 v.
 
 Wilkinson
 
 and the others relied upon by the appellant’s comiser were on bills brought by subsequent creditors to have c0nvcyances set aside as fraudulent, and the property applied to the satisfaction of the debts of the settler or donor. In such bills the complainants usually charge that the person making the conveyance was indebted at the time of the voluntary conveyance, and must allege that the conveyance was made with intent to defeat, hinder or delay creditors. If they succeed
 
 in
 
 showing this fraudulent purpose, the settlement is avoided, the property becomes assets and all the creditors are permitted to come in upon this property for the satisfaction of their demands. The
 
 intent
 
 to hinder and delay a creditor is sufficient, and it is not necessary to show that such intent was prosecuted with success. If in truth there be prior creditors yet unsatisfied, and who have no means of satisfaction except out of the property attempted to be given away, and it is asked what is then the rule of a Court of Equity, in any case fit for the exercise of its jurisdiction, I answer in the language of Lord
 
 Hardwicke, (Townsend
 
 v.
 
 Windham,
 
 2
 
 Ves.
 
 10.) “I knew of “ no case on the I3th
 
 Elizabeth
 
 where aman indebted at “the time makes a voluntary conveyance to a child “ and dies indebted, but that
 
 it shall be considered
 
 a “part of his estate for the benefit of his creditors.”— But if such prior ci*editors have been actually paid off, the complainants may neverthelsss insist that the conveyance was made with an actual intent to defeat them, or that it was made with an intent to defeat subsequent creditors or some of them. To establish or to repel either
 
 of these
 
 allegations, the degree of
 
 indebtedness of
 
 the settler, and his pecuniary ability, at the time of the conveyance, circumstances attending the transaction itself, and furnishing an
 
 indication of the
 
 motives which induced it, become very interesting matters of enquiry. Some of the chancellors will not draw an inference of fraudulent intent in such a case from an embarrassment short of what is tantamount to insolvency, while others, consider a large or a considerable indebtedness as fur- ’
 
 *205
 
 nishi ng
 
 sufficient evidence of
 
 this in ten f. But it is believed that no adjudication of an English Chancellor,
 
 no dictum
 
 of a judge in an English Court of Equity, can be found, which warrants the idea that a voluntary conveyance to a child will be upheld to defeat a prior creditor whatever may be the amount of his demand.
 

 The decisions in courts of Law, in relation to conveyances, alleged to be in fraud of creditors, are in precise conformity with those asserted in Equity. The law annuls not voluntary conveyances as such, but fraudulent conveyances. Conveyances are not necessarily fraudulent because they arc voluntary, nor are they necessarily fair because made on valuable consideration ; but a voluntary conveyance is necessarily and in law fraudulent when opposed to the claim of a prior credit- or.
 
 Where the
 
 creditors who allege an intent to defraud, arc subsequent to the gratuitous alienation, there the language of Lord
 
 Mansfield
 
 is pertinent and applicable.
 
 “
 
 A voluntary conveyance may be good against credit-
 
 “
 
 ors notwithstanding its being voluntary. The cir-
 
 “
 
 cumstance of a man being indebted at the time, is an “
 
 argument
 
 of fraud, but the question is whether the act
 
 “
 
 done, is a
 
 bonafde
 
 transaction, or a trick and contri-
 
 “
 
 vanee to defeat creditors.”
 
 (Cowper,
 
 434.) But where the controversy is between a prior creditor and a voluntary donee, where such prior creditor must lose his debt if the gift be held valid, there the language of the Judges in the case of
 
 Nunn
 
 &
 
 Ludsbrooke
 
 v.
 
 Wilsmore,
 
 in (8
 
 Term,
 
 521,) proclaims the established rule,
 
 **
 
 if the deed be voluntary,
 
 the law
 
 says it is fraudulent.” A gift as against such a creditor seems to me as fraudulent and void at common law, as an alienation for value after the
 
 teste
 
 of an execution against a judgment creditor. The tribunal which ascertains facts, is not needed to pass on the question of actual intent in the one case more than in the other. The fact itself, that the creditor is thereby hindered in the language of this court, in the case of
 
 Mordecai
 
 v.
 
 Parker, (ante
 
 2
 
 vol. p.
 
 427,) “ establishes the intent and nothing can be heard against it.” A proper construction of the statute brings
 
 *206
 
 mo to the same result. Every gift of a part of a debt- or’s property by lessening the fund on which his then existing creditors rely for payment, has a necessary tendency to hinder and delay them in the collection of their just dues and demands. The law regards every act of a rational being as done with intent to accomplish an effect which it has a tendency to produce, when that effect is actually produced by it. A gift therefore of a debtor’s property, set up to defeat a creditor in the collection of his demand, comes within the enacting words of the statute, and although it may not have been for a positively dishonest purpose, it cannot be brought within the proviso, for that protects such only as are made
 
 bona fide
 
 and for a consideration of value.
 

 The rule thus asserted seems to be regarded, on the part of the appellant as harsh and unfeeling. If however it be the rule of law, it must, however rigorous, be inflexibly maintained. But in truth, is it as a general rule, rigorous? And if so, against whom? It establishes no more than that he who would give away property, and he who would hold what is attempted to be given, wdien the transaction endangers existing rights, must at their peril take care to secure these rights from injury. If the alienation permitted to stand will defeat such rights, an honest donor cannot complain that the Jaw will not permit such a result, but deny efficacy to his heedless act. Has the donee a right to complain? If the debt were large, it seems to be admitted that the rule would operate no injustice; and if it be small, can it be any great hardship on him who has received a bounty to relieve the property from the trifling incumbrance w'ith which it was burthened? Thus may justice and liberality be properly reconciled, and the claims of affection i’e-ceive regard without violence to rights of higher obligation.
 

 It has not been denied by the counsel for the appellant, if a voluntary settlement is necessarily fraudulent as against a prior creditor,the judge was right in laying down this position as a principle of law. It may not be amiss however to state that where certain acts are
 
 *207
 
 regarded only as badges of fraud, the conclusion becomes tlien a question of actual intent which cannot be pass. ed upon except through the intervention of the jury. So this court has ultimately decided on the much vexed controversy, whether a possession of the vendor or donor} inconsistent with the terms of the conveyance, be a fraud in law, or only evidence of a fraudulent design. There is no disposition to arraign or to question that determination. The right of the jury to pass on every question of fact, has been and ever will be guarded in this court with jealous care. But the law which arises upon facts the institutions of our country have wisely confided to ano. ther tribunal, and this courtis bound by the most sacred obligations to take care that the duty of administering that lawshall be exercised by theappropriatetribunal. There is no other mode by which we can rationally hope to preserve the law of the land, what it ought to be, a permanent, uniform and universal rule of' action. Any error of this tribunal may be deliberately and solemnly reviewed and corrected, and thus in a great degree, and to most practical purposes, may be stayed those fluctuations from which no human establishments can be absolutely exempt. If by a series of decisions in this country, and in that of our ancestors, for more than two centuries, it has been invariably held, as I fully believe it lias, that a debtor shall not be permitted to defeat an existing creditor by a gratuitous disposition of his effects, then surely this doctrine has become a rule of property which must govern all such dispositions, and is part of the established law of the land. Every alienation after the teste of an execution endangers the rights of a judgment creditor, and therefore
 
 by the
 
 common law, was regarded and is still regarded with us as unavailing against such rights. Every gratuitous alienation endangers the rights of existing creditors, and therefore shall not impede the assertion of these rights^ The law will not permit such alienations to postpone those whom it orders to be preferred. The attempt to oppose these
 
 acts
 
 to those
 
 'rights,
 
 the law prohibits as a fraud, and it W'ould be faithless to itself, if it did not enforqe
 
 *208
 
 tills prohibition by denying all efficacy to the forbidden act.
 

 I am of opinion that the plaintiff has not sustained his exceptions to the charge of the judge, and that the judgment appealed from ought to be affirmed.